UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**WANDA MOORE,**
        Plaintiff,

v.

**FRANK BISIGNANO,
Commissioner of the Social
Security Administration,**
        Defendant.

**Case No. 4:24-cv-950-CLM**

## MEMORANDUM OPINION

Wanda Moore seeks disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Moore's application in an opinion written by an Administrative Law Judge ("ALJ"). Moore argues that the ALJ erred in evaluating opinion evidence from Dr. Vanessa Sui, a consultative examiner.

As detailed below, the ALJ did not reversibly err. So the court **WILL AFFIRM** the SSA's denial of benefits.

**I.     STATEMENT OF THE CASE**

    **A.     Moore's Disability, as told to the ALJ**

Moore was 47 on her alleged onset date and 50 at the time of the ALJ's hearing decision. (R. 33–34). Moore has a high school education and vocational training in electronics. (R. 46). And Moore has past relevant work as an automobile assembler at two different automotive plants. (R. 60–61, 291–93). Moore also reported working as a daycare worker from 1997 to 2008, but the ALJ found that this job didn't qualify as past relevant work under the SSA's regulations. (R. 32, 60–61).

At the ALJ hearing, Moore testified that she suffered from left shoulder pain, tendonitis in her right wrist, and lower back pain. (R. 47–48). According to Moore, she takes ibuprofen and methocarbamol for her pain and would be in 10/10 pain if she didn't take those medications. (R. 49). Moore has had pain blocks and physical therapy for her back pain, but neither treatment method provided her with pain relief. (R. 49–51). And though Moore has had two shoulder surgeries, she still feels pain in her left shoulder/bicep. (R. 46–47, 53–54).

Because of her back pain, Moore says that she cannot stand for more than 10 minutes at a time. (R. 51–52). Moore also says that she can only walk for 2 to 3 minutes before she begins to feel a sharp pain. (R. 52–53). And Moore reports that she cannot lift more than a gallon of milk in either hand. (R. 53).

Moore also suffers from digestive issues that cause cramps, constipation, and diarrhea. (R. 54–55). Moore takes tramadol and gabapentin to treat these issues and has also been prescribed antibiotics in response to diverticulosis flare ups. (*See id.*). Moore gets a migraine 3 or 4 times a week. (R. 55). To treat these migraines, Moore takes Excedrin and goes into a dark, quiet room. (R. 55–56).

As for daily activities, Moore says she can no longer do household chores like sweeping, mopping, washing dishes, or doing laundry. (R. 56). Moore has her groceries delivered and usually leaves the house only if it is to drive a short distance to pick up her medications. (R. 58). If Moore needs to go a longer distance, her husband drives her. (*Id.*). Moore's husband also fixes her breakfast and lunch, and Moore waits until her husband is home from work to take a bath or shower. (*Id.*).

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C.     Moore's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Moore applied for DIB, a period of disability, and SSI in March 2021, claiming that she could not work because she suffers from chronic pain in lower back, chronic disc degeneration, diverticulosis, irritable bowel syndrome, pain in shoulder rotator cuff, and headaches. (R. 285). After receiving an initial denial in February 2022, Moore requested a hearing, which the ALJ conducted in September 2023. The ALJ ultimately issued an opinion denying Moore's claims in November 2023. (R. 17–34).

At Step 1, the ALJ determined that Moore was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined Moore suffered from the following severe impairments: lumbar spine degenerative disc disease consisting of spondylosis with radiculopathy; cervical spine degenerative disc disease; left shoulder adhesive capsulitis and bursitis status post shoulder arthroscopy with rotator interval release, biceps tenotomy, and subacromial decompression with acromioplasty; and morbid obesity.

At Step 3, the ALJ found that none of Moore's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Moore's residual functional capacity.

The ALJ determined that Moore had the residual functional capacity to perform a range of light work with these added limitations:

- Moore can frequently climb ramps and stairs.

- Moore cannot climb ladders, ropes, or scaffolds.

- Moore can only frequently stoop, kneel, crouch, and crawl.

- Moore can occasionally crawl.

- Moore can occasionally reach overhead with the left upper extremity.

- Moore can frequently handle and finger with the bilateral upper extremities.

- Moore can have occasional exposure to temperature extremes and vibrations.

- Moore can have no exposure to unprotected heights, hazardous machinery, open bodies of water, and commercial driving.

At Step 4, the ALJ found that Moore could not perform her past relevant work as an automobile assembler. At Step 5, the ALJ determined that Moore could perform jobs, such as folding machine operator and cleaner, housekeeper, that exist in significant numbers in the national economy and thus Moore was not disabled under the Social Security Act.

Moore requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.   STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal

standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

### III.  LEGAL ANALYSIS

Moore argues that the ALJ did not adequately evaluate the findings of Dr. Sui under the SSA's 2017 regulations on evaluating medical opinions. The 2017 regulations require ALJs to articulate how persuasive they find all medical opinions in the claimant's case record. *See* 20 C.F.R. § 404.1520c(b). In evaluating a medical opinion, an ALJ should focus on the persuasiveness of the opinion by looking at the opinion's supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but need not, explain how she considered other factors, such as the medical source's relationship with the claimant and specialization, when assessing a medical opinion. *See id.* "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions will be." 20 C.F.R. § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

*1. Dr. Sui's opinion*: Dr. Sui performed a physical consultative exam of Moore in October 2022. (R. 561). During Moore's examination, she was not able to walk on her toes, and while Moore could walk on her heels, she complained of weakness after taking 3 steps. (R. 563). Moore could squat to the floor and recover, but Moore could only bend her knee about 120 degrees. (*Id.*). Moore could perform tandem heel walking, could get up and out of the chair without difficulty, and got on and off the examination table without difficulty. (*Id.*). But Moore could not bend over and touch her toes. (*Id.*). Instead, Moore was only able to touch her knees. (*Id.*).

Moore ambulated with difficulty and had a moderately antalgic gait. (*Id.*). But Moore did not need an assistive device to walk. (*Id.*). As for Moore's motor strength, Dr. Sui found that Moore had 4/5 strength in each arm and 3/5 strength in each leg. (R. 565). But during the strength testing, Moore did not fully cooperate and complained of pain. (*Id.*). Moore's grip strength in both hands was 4/5, but Moore had normal fine and gross manipulative skills. (*Id.*). Moore had a 1+ reflex on her biceps, triceps, left and right patella, and Achilles. (*See id.*). And Moore had decreased range of motion in her cervical and lumbar spine but had a normal range of motion in her shoulder, elbow, wrist, hands, knee, hip, and ankle. (R. 566).

According to Dr. Sui, Moore failed to fully cooperate during the consultative exam by not giving "the best effort throughout [the] physical exam portion," and Dr. Sui was "unsure if this was due to pain." (*See id.*). But Dr. Sui determined that Moore's medical history and her clinical findings established that Moore had several physical limitations. (R. 567). First, Dr. Sui found that Moore has a limitation in standing and can only occasionally stand during an 8-hour work day (*i.e.*, stand for only 1/3 of an 8-hour day). (*Id.*). Dr. Sui also said that Moore had a limitation in walking and could only occasionally walk during an 8-hour work day (*i.e.*, walk for only 1/3 of an 8-hour day). (*Id.*). Dr. Sui then said that Moore had a limited ability to bend or stoop due to significant pain. (*Id.*). And Dr. Sui found that Moore can only occasionally lift and carry 5-10 pounds on both her right and left side. (*Id.*). Finally, Dr. Sui said that Moore has difficulty ambulating but doesn't need an assistive device. (*Id.*).

*2. Supportability*: The ALJ was not persuaded by Dr. Sui's opinion on Moore's physical limitations. (R. 31). In evaluating the supportability factor, the ALJ said that Dr. Sui's opinion wasn't supported by her clinical findings. (*Id.*). The ALJ recognized that during the consultative exam, Moore ambulated with difficulty, had a moderately antalgic gait, decreased range of motion of the lumbar and cervical spine, decreased strength of all extremities, and decreased grip strength. (*Id.*). But the ALJ noted that Moore "otherwise, had full range of motion of all other joints, intact sensation, normal grip strength, intact fine and gross

7

manipulation, and normal reflexes." (*Id.*). The ALJ also emphasized that Dr. Sui reported that Moore did not fully cooperate when testing her strength and complained of pain. (*Id.*). Plus, the ALJ noted that Moore could walk on heels and squat and recover even with complaints of weakness. (*Id.*). Finally, the ALJ pointed out that Dr. Sui observed Moore getting up and out of a chair and on and off the examination table without difficulty. (*Id.*).

The ALJ's evaluation of the supportability factor was reasonable. To be sure, several of Dr. Sui's clinical findings, including the findings that Moore could not walk on her toes, had an antalgic gait, and a limited range of motion in her lumbar and cervical spine, support the walking and standing limitations Dr. Sui gave Moore. And the ALJ was incorrect when she stated that Dr. Sui found that Moore had normal grip strength. But a reasonable person could agree with the ALJ that overall Dr. Sui's clinical findings don't support the limitations she gave Moore. For example, Moore's ability to walk on her heels and get up and out of a chair and on and off the examination table without difficulty undermines Dr. Sui's opinion that Moore has difficulty ambulating and is limited to only occasionally walking and standing during an 8-hour work day. And even though Moore complained of weakness, her ability to squat and recover undermines Dr. Sui's statement that Moore has a limited ability to bend or stoop. Finally, Moore's failure to fully cooperate during the strength testing calls into question Dr. Sui's finding that Moore can only occasionally carry and lift 5-10 pounds on each side.

The court rejects Moore's argument that the ALJ legally erred in not providing an "accurate and logical bridge" between Dr. Sui's clinical findings and the ALJ's determination that these findings didn't support Dr. Sui's medical opinions. (*See* Doc. 11, pp. 15-16). The ALJ adequately addressed the supportability factor by pointing to the clinical findings that she considered in deciding whether Dr. Sui's opinions were persuasive. (R. 31). While some of these findings supported Dr. Sui's opinions, other findings contradicted them. And "[i]t is solely the province of the Commissioner to resolve conflicts in the evidence." *Lacina v.*

8

*Comm'r Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (cleaned up). As the ALJ addressed Dr. Sui's clinical findings and substantial evidence supports the ALJ's supportability determination, the court finds that the ALJ did not err in addressing the supportability factor.

*3. Consistency*: The ALJ also found that Dr. Sui's opinions weren't consistent with the evidence from other medical sources. (R. 31). The ALJ noted that a March 2021 MRI of the lumbar spine showed mild chronic degeneration of the lower two lumbar discs, not substantially changed since 2016, no neural impingement, and was otherwise negative. (R. 31, 389, 466). The ALJ then explained that Moore's Spine Care examination findings showed that she had tenderness of the bilateral paraspinal muscle and facet joints of the lumbar spine, plus pain with range of motion of the lumbar spine, but otherwise had full range of motion of all other joints, full strength of all extremities, no edema, erythema, or atrophy, normal reflexes, negative straight leg raise tenderness, and intact sensation throughout. (R. 31, 466, 474, 481–82). Plus, Moore's back pain was treated with epidural steroid injections, physical therapy, and medication. (R. 31). Moore's primary care records show that she had tenderness along the midline sacral and lumbar spine, but had no step-offs, normal range of motion, soft and non-tender abdomen, lungs clear to auscultation, cooperative behavior, normal orientation, and clear and coherent speech. (R. 31, 523, 551, 611, 635).

As for Moore's shoulder pain, the ALJ explained that Moore underwent left shoulder arthroscopy with rotator interval release, biceps tenotomy, and subacromial decompression acromioplasty. (R. 31, 444–53, 488–91). Postoperative visit notes show that Moore was doing fairly well but continued to have moderate shoulder pain and denied paresthesia (numbness). (R. 31, 441, 495). Examination findings showed that Moore had a slightly decreased range of motion, and tenderness to the anterior, superior, lateral, and posterior shoulder, but had healed surgical incisions without complications, normal strength, intact sensation, and normal pulses. (R. 31–32, 439).

Contrary to Moore's assertion, the ALJ's discussion of the consistency factor provides enough explanation for the court to meaningfully review the ALJ's finding that the objective medical evidence from other providers contradicted Dr. Sui's medical opinion. And the ALJ did not legally err by failing to more specifically link the cited evidence to the ALJ's conclusion that Moore wasn't as limited as Dr. Sui asserted. "[I]t is not as if the ALJ provided 'no explanation' and there is 'no obvious reason for the inconsistency in sight.'" *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1275 (11th Cir. 2024). Instead, "it is hard to imagine how the ALJ could have been clearer" about which medical records she found inconsistent with Dr. Sui's opinion. *See id.* at 1276. And a reasonable person could agree that Moore's MRI results, numerous normal range of motion findings, strength in her extremities, and treatment history contradicted the physical limitations that Dr. Sui placed on Moore.

Moore cites to other medical records, not cited by the ALJ, that she says align with Dr. Sui's opinion. The ALJ cited much of this evidence when explaining her residual functional capacity finding, and "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" as long as the decision is not "a broad rejection" that casts doubt on whether the ALJ considered the claimant's "medical condition as a whole." *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Having reviewed the ALJ's hearing decision and discussion of the consistency factor, the court finds that the ALJ adequately considered medical evidence both favorable and unfavorable to Moore when evaluating the persuasiveness of Dr. Sui's medical opinion.

—

In short, the ALJ's opinion reflects that she adequately evaluated Dr. Sui's opinion evidence by considering the supportability and consistency factors. And a reasonable person could agree with the ALJ's finding that Dr. Sui's opinion wasn't persuasive. So the ALJ's evaluation of Dr. Sui's opinion applied the correct legal standards and is supported by substantial evidence.

## IV. CONCLUSION

For these reasons, the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on May 29, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE